# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

PAMELA LOGSDON,            )
                           )
    Plaintiff,            )
                           )
v.                         )    Case No. CIV-14-366-M
                           )
CAROLYN W. COLVIN,         )
Acting Commissioner of the )
Social Security Administration, )
                           )
    Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Pamela Logsdon brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Upon review of the administrative record (Doc. No. 9, hereinafter "R.__") and the arguments and authorities submitted by the parties, the undersigned recommends that the Commissioner's decision be reversed and remanded.

PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on February 24, 2011, alleging a disability onset date of October 25, 2010. R. 130-34, 160-62. Following denial of her

application initially and on reconsideration, an Administrative Law Judge ("ALJ") conducted a hearing on August 16, 2012. R. 29-64. The ALJ issued an unfavorable decision on November 16, 2012. R. 20-28. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-4; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 25, 2010, the alleged onset date. R. 22; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of "back problems and arthritis." R. 22-24; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24-25; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 25-26; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform "sedentary work," subject to additional limitations that "[s]he could occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl but never climb ladder/rope/scaffolds." R. 25; *see* 20 C.F.R. § 404.1567(a) (defining "sedentary work"). At step four, the ALJ found that Plaintiff was capable of performing

past relevant work as an inventory control clerk (performed as sedentary, skilled, SVP 5) and title clerk (sedentary, semiskilled, SVP 3). R. 26-27; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), .1565, .1567, .1568.

The ALJ alternatively conducted a step-five determination of whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Taking into consideration the testimony of a vocational expert ("VE") regarding Plaintiff's transferable work skills, the ALJ concluded that Plaintiff could perform occupations such as data entry clerk, telephone answering operator, and inventory transcriber, all of which offer jobs that exist in significant numbers in the national economy. R. 27-28; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), .1545(a)(5)(ii). On these bases, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 25, 2010, though the date of the decision. R. 28; *see* 20 C.F.R. § 404.1520(g).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270

(10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff alleges that the ALJ's decision was not supported by substantial evidence. Pl.'s Br., Doc. No. 11, at 3-4. Specifically, Plaintiff contends that the ALJ failed to properly analyze the medical evidence of record and failed to properly analyze Plaintiff's credibility. Pl.'s Br. at 4-9, 9-15.

A. *Medical Record*

With respect to the first allegation, Plaintiff asserts that the ALJ violated controlling legal standards by failing to properly consider medical opinion evidence from consulting examiner Bill Buffington, MD, treating physician Fahed Hamadeh, MD, and treating physician Brian Levy, MD. Pl.'s Br. at 4-9. Plaintiff asserts that the ALJ erred by not identifying the weights he gave to these medical sources, discussing his reasons for rejecting aspects of those opinions, and failing to consider probative evidence contrary to his conclusions, thereby rendering the ALJ's opinion unsupported by substantial evidence. Pl.'s Br. at 4-9.

The undersigned agrees and finds that the ALJ did not adhere to the proper legal standards in reviewing certain medical evidence of record. Accordingly, under Tenth Circuit law, the ALJ's decision must be reversed and remanded for further review. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If . . . the correct legal test in weighing evidence has not been applied, . . . such failure constitutes grounds for reversal.").

   1. Dr. Bill Buffington

As Defendant notes, "[C]onsultative examiner Dr. Buffington opined that Plaintiff experienced manipulative limitations due to diminished grip strength." Def.'s Br., Doc. No. 12, at 11 (citing R. 239). Upon examination of Plaintiff, Dr. Buffington found, among other things, that Plaintiff, who is right-handed, had right-hand grip strength of 3+/5 and cannot manipulate small objects or effectively grasp tools such as a hammer. *See* R. 239.

The ALJ must evaluate every medical opinion received and must consider multiple statutory factors in deciding the weight to give to each medical opinion. 20 C.F.R. 404.1527(c), (c)(3)-(6); SSR 06-3p, 2006 WL 2329939, at *2-3 (Aug. 9, 2006). Specifically, the ALJ was required to "evaluate" and "consider" the opinion of Dr. Buffington, and to the extent any aspect of it was rejected, "to provide specific, legitimate reasons" for that rejection. *See Doyal*, 331 F.3d at 763; 20 C.F.R. §§ 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). *See also* 20 C.F.R. §§ 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the

5

weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from [medical] sources who do not work for us.").

The ALJ did not discuss Dr. Buffington's opinion of Plaintiff's manipulative limitations or her reduced grip strength. *See* Pl.'s Br. at 5-6; R. 23 (ALJ reciting findings from Dr. Buffington's June 13, 2011 consultation exam of Plaintiff, including painful range of motion in right wrist and fingers, but not discussing assessment of manipulative limitations and reduced grip strength). Nor did the ALJ discuss his evaluation of the weight to be assigned to these (or any) aspects of Dr. Buffington's opinion, including any reason for rejecting them. *See* R. 26; *cf.* 20 C.F.R. § 404.1527(c)(3)-(6). The ALJ did not include in the RFC any right-hand grip strength or other manipulative limitation and, further, adopted postural limitations that arguably require greater capacity than that indicated for Plaintiff by Dr. Buffington. *See* R. 25 (finding that Plaintiff had the RFC to perform "sedentary work," subject to additional limitations that "[s]he could occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl but never climb ladder/rope/scaffolds"). Because the ALJ's RFC assessment is contrary to Dr. Buffington's opinion, the ALJ's failure to properly explain the weighing of that opinion is error. *See Doyal*, 331 F.3d at 763; 20 C.F.R. 404.1527(c),

Defendant presents several reasons why "the ALJ reasonably gave greater weight to the opinions of [two nonexamining state agency medical consultants] than to the opinion of Dr. Buffington," citing to the record and to the ALJ's decision. Def.'s Br. at 12-13; *see* R. 23, 26, 253-60, 262. While the reasons set forth in Defendant's brief may

have been sound had the ALJ relied upon them, there is no indication in the written decision that the ALJ considered these factors or decided to give more weight to the nonexamining consultants than to Dr. Buffington based upon these factors. *Compare* Def.'s Br. at 12-13, *with* R. 23, 26. Likewise, despite Defendant's statement that "[t]he ALJ considered the State agency physicians' discussion of the inconsistencies in Dr. Buffington's notes," the ALJ's decision does not reflect whether the ALJ did, in fact, consider such discussion of inconsistencies. *See* Def.'s Br. at 12-14; R. 23, 26. Defendant further states that "while the ALJ did not explicitly state that he was giving little weight to Dr. Buffington's opinion of Plaintiff's manipulative limitations, it is apparent from the ALJ's decision that he gave diminished weight to it because of those inconsistencies." Def.'s Br. at 14. Again, however, such reasoning is not actually apparent from the ALJ's decision, as there is no mention of the alleged inconsistencies within any discussion of Dr. Buffington's opinion. The Court is "not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

    2. <u>Dr. Fahed Hamadeh</u>

Plaintiff argues that the ALJ did not properly consider Dr. Hamadeh's medical records as they related to Plaintiff's hand and shoulder function. Pl.'s Br. at 6. Defendant does not dispute that Dr. Hamadeh was Plaintiff's treating physician. *See* Pl.'s Br. at 4 ("treating physician Fahed Hamadeh, M.D."); Def.'s Br. at 3 ("Plaintiff began receiving treatment from Fahed Hamadeh, M.D., in June 2012 after testing positive for rheumatoid arthritis."). Defendant does, however, challenge Plaintiff's characterization

of Dr. Hamadeh's records as "medical opinions." Def.'s Br. at 14-15. Defendant argues that Dr. Hamadeh's medical records were only "observations and x-ray results" and not "medical opinions" as defined in SSA regulations. Def.'s Br. at 15.

A "medical opinion" is a regulatory term reserved for "judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical and mental restrictions." *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (alterations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1527(a)(2). The undersigned disagrees with Defendant and finds that although Dr. Hamadeh's records may have included some nonmedical opinions, these records also included "judgments" pertaining to symptoms and diagnoses. On June 19, 2012, Dr. Hamadeh diagnosed Plaintiff with inflammatory arthritis, fatigue, right shoulder pain, positive antinuclear antibody, lumbar degenerative disc disease, and lumbar vertebral fracture. R. 272. The medical records from this date also include a review of Plaintiff's symptoms and the results of a physical exam. R. 268-72. At Plaintiff's next appointment on July 31, 2012, after reviewing x-rays and blood work and considering any changes in Plaintiff's symptoms since the prior appointment, Dr. Hamadeh diagnosed: rheumatoid arthritis; seronegative rheumatoid arthritis with erosion to hand; inflammatory arthritis; and right shoulder pain, frozen, much better after steroid injection. R. 276. These judgments about diagnoses and symptoms are within the regulatory definition of "medical opinion." *See Duncan v. Colvin*, No. 14-5081, 2015 WL 1475314, at *5 (10th Cir. Apr. 2, 2015) (finding diagnoses of plaintiff's treating physician constituted "medical opinion . . .

8

regarding medical diagnoses"; citing 20 C.F.R. § 404.1527(a)(2)); *Lackey*, 127 F. App'x at 458 (finding physician's diagnosis, findings of limited range of motion, and prognosis "all appear to fit within the definition of medical opinion set out in [20 C.F.R.] § 404.1527(a)(2)").

Under SSA regulations and Tenth Circuit precedent, the Commissioner will generally give more weight to medical opinions from treating sources than those from nontreating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). The ALJ must first determine if the treating source opinion is entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the opinion is not entitled to controlling weight, it is still entitled to deference, and the ALJ must then determine the proper weight for the opinion using certain regulatory factors. *Id.* at 1300-01. The "ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion." *Id.* at 1300 (internal quotations omitted). Further, those reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotations omitted). "[I]f the ALJ rejects the opinion completely, he must . . . give specific, legitimate reasons for doing so." *Id.* at 1301 (internal quotations omitted).

The ALJ failed to follow these standards with respect to Dr. Hamadeh's diagnoses and assessment of hand and shoulder restrictions. The ALJ recited but did not expressly weigh Dr. Hamadeh's diagnoses of inflammatory and rheumatoid arthritis. *See* R. 24, 25, 271, 276. These omissions alone might not be prejudicial error because the ALJ credited

those assessments by accepting arthritis as a severe impairment. *See* R. 22. However, the ALJ further did not mention, or assign any weight to, Dr. Hamadeh's July 31, 2012 diagnoses of "seronegative rheumatoid arthritis *with erosion to hand*" or "right shoulder pain, frozen." *See* R. 276 (emphasis added). Though general, these are medical opinions about physical restrictions that are contrary to the ALJ's determination that the RFC include no manipulative limitations and only certain postural limitations. The opinions are also relevant to the ALJ's credibility analysis, which rested on a finding that Plaintiff's testimony regarding her physical restrictions (including that as a result of arthritis in her right hand she could not use a computer) was not supported by the medical evidence. R. 25-26. The ALJ was required to discuss and weigh Dr. Hamadeh's assessment of hand and shoulder limitations in accordance with 20 C.F.R. § 404.1527(c)(2)-(6). It was error not to do so.

    3. Dr. Brian Levy

In his decision, the ALJ mentioned Dr. Levy's treatment of Plaintiff at four visits from August 2004 through April 2008. R. 22. Plaintiff asserts that Dr. Levy was a treating physician whose records should have been evaluated as medical opinions of a treating physician. Pl.'s Br. at 4-5. Plaintiff does not, however, develop this argument or set forth any specific diagnoses, limitations, or medical judgments within those records that the ALJ failed to consider. *See* Pl.'s Br. at 4-9. While not challenging that Dr. Levy was a treating physician, Defendant argues that Dr. Levy's medical records were not medical opinions but instead were "a treating physician's observations of Plaintiff well before her alleged onset of disability." Def.'s Br. at 14-15.

Because the undersigned is recommending that this matter be remanded on the bases of the ALJ's review of Drs. Buffington's and Hamadeh's medical opinion evidence, he need not reach Plaintiff's allegations regarding Dr. Levy's medical evidence. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). If there are specific medical opinions by Dr. Levy that are relevant to the Commissioner's determination, notwithstanding their date of issuance, Plaintiff may address them on remand. *Cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) (holding medical records predating disability period "are nonetheless part of [claimant's] case record, and should have been considered by the ALJ").

## B. *Credibility Assessment*

Based on the recommendation that this matter be remanded, the undersigned need not address the remaining claim of error raised by Plaintiff. *See Watkins*, 350 F.3d at 1299.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such

objections must be filed with the Clerk of this Court by September 3, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 20th day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE